CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
1/2/2019
JULIA C. DUDLEY, CLERK
BY: s/ SUSAN MOODY
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JULIA B.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:17-cv-508 |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Julia B. ("Julia") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Julia alleges that the ALJ erred by failing to properly weigh the medical opinions in the record, and failing to properly accommodate her limitations with concentration, persistence or pace. Julia also alleges that the Appeals Council failed to properly consider additional evidence submitted after the ALJ's decision denying her claim. I agree that the ALJ failed to sufficiently explain the weight given to the physician opinions in the record and failed to properly account for Julia's moderate impairment in concentration, persistence, or pace; and thus, the decision is not supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No.18), **GRANTING in part** Julia's Motion for Summary Judgment

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

(Dkt. No. 16) and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Julia failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the Court of Appeals remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Mascio, 780 F.3d at 636, Monroe, 826 F.3d at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Julia's RFC.

## **CLAIM HISTORY**

Julia filed for DIB on February 8, 2013, claiming that her disability began May 19, 2008. Administrative Record, hereinafter "R." 147.  Julia was insured for benefits through December 31, 2013. R. 50, 52. The Commissioner denied the application at the initial and reconsideration levels of administrative review.  R. 147–79.  ALJ Jeffrey Scheuler held an administrative hearing on February 23, 2016, to consider Julia's disability claim. R. 114–46.  Julia was represented by an attorney at the hearing, which included testimony from Julia and vocational expert John Newman. Id.

On March 30, 2016, the ALJ entered his decision analyzing Julia's claim under the familiar five-step process,[3] and denying Julia's claim for disability. R. 50–61.  The ALJ found that Julia suffered from the severe impairments of lumbar spine degenerative disc disease, left ankle fracture, right shoulder degenerative joint disease, obesity, bipolar disorder, personality disorder, post-traumatic stress disorder ("PTSD"), and major depressive disorder. R. 52. The ALJ determined that Julia's severe impairments did not meet or medically equal a listed impairment, and that she retained the RFC to perform light work, except that she can frequently balance, stoop, or kneel, and occasionally climb, crouch, crawl, or reach overhead. R. 55.  The

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

ALJ found that Julia is limited to a low-stress job with only occasional decision making or changes in the work setting, occasional interaction with the public or co-workers, and is isolated with only occasional supervision. Id. The ALJ also found that Julia would be expected to be absent from work periodically, but not more than once a month. Id.

The ALJ determined that Julia is unable to perform her past relevant work of fast food cook or mirror inspector but that she could perform other work in the national economy, such as assembler and packer. R. 59–60. Thus, the ALJ determined that Julia is not disabled. R. 61. Julia appealed the ALJ's decision and submitted additional records to the Appeals Council for review. R. 1–5. On September 7, 2017, the Appeals Council denied Julia's request for review and this appeal followed. Id.

## ANALYSIS

Julia asserts that the ALJ failed to properly weigh the medical opinions in the record, and as a result, the RFC assessed by the ALJ fails to properly account for her moderate impairment with concentration, persistence or pace. Pl. Br. Summ. J. p. 4–12. I agree that the ALJ did not sufficiently explain how a limitation to low-stress jobs adequately accommodates Julia's moderate impairment with concentration, persistence or pace.

Julia began counseling treatment with Peace of Mind Counseling Services in September 2011, after her husband attempted suicide. R. 341, 415. Julia reported a history of anxiety and depression, a suicide attempt when she was 12 years old, and an inpatient hospitalization in 1999. R. 342. She reported that she was sexually abused as a child and then recently by her stepson and had an abusive marriage. R. 345. She reported difficulty with sleep and appetite, crying a lot, and feeling hopeless. Id. The therapist diagnosed PTSD. R. 346.

Julia's treatment notes with Peace of Mind Counseling Services reflect that she responded well to medication (Celexa), and felt more calm and relaxed at home, although she continued to feel sad and anxious. R. 359–60. Julia canceled four sessions between January and March 2012, and when she returned in April, Julia continued to present with anhedonia, a paranoid affect and somatic but oriented thought processes. R. 349.

Julia received mental health treatment from her primary care physician Knotresha F. Stewart, M.D., at New River Internal Medicine, and was treated with Lexapro, Valium and other medications for her depression, anxiety and panic attacks. R. 392–423, 490. From June 2011 through April 2012, Julia's treatment notes reflect a period of depression and increased stress at home (R. 418); her history of psychiatric disorder and multiple previous suicide attempts (R. 416); that she was taking Celexa and feeling much better (R. 414); complaints of depression, increased stress due to domestic issues, not sleeping well at night and anger issues (R. 410); and reported anxiety attacks when she has disagreements with her son (R. 405).

On April 9, 2012, Julia reported three days of panic disorder that resulted in an emergency room visit. R. 404. The emergency room gave her Xanax that "got rid of it." Id. Dr. Stewart made adjustments to Julia's medications and Julia reported "doing well." R. 403. The next visit on May 8, 2012, Julia presented with a panic attack and was given oxygen. R. 402. In August 2012, Dr. Stewart noted that Julia's depression was "stable," (R. 397), but in December 2012, Julia was very anxious and upset and reported that Valium was not working. R. 395. During her next visit in February, Julia had increased stress, was "crying significantly, very upset and hyperventilating in the room." R. 394. In May 2013, Julia reported that her depression and panic attacks were stable. R. 393. In June 2013, Julia reported increased anxiety attacks, and she declined a psychiatric evaluation. R. 392.

On November 1, 2013, consultative examiner Emilie Storch, Ph.D., evaluated Julia at the request of the Commissioner. R. 505. Dr. Storch reviewed Julia's records and performed an in person evaluation. Dr. Storch diagnosed bipolar illness, panic with agoraphobia, personality disorder (attention seeking), ankle injury, back pain, degenerative disk disease, and "lives in the midst of continual turmoil blaming others." R. 511. Dr. Storch stated that Julia,

> has an unknown ability to function at an appropriate level of personal, social and occupational adjustment. Intellectually, she likely functions in the mild M[ental] R[etardation] range. Emotionally, she likely has a mood disorder, anxiety with panic and certainly serious psychological problems in the form of a personality disorder. Environmentally, she lives at home and does very little. Kimberly does everything for her. Her approach to work is that she has worked but she currently does not feel that she can work due to her back problems. An overall assessment of this individual is that she is one that is hard to tell exactly what is wrong with her because her presentation involves so many exaggerated stories it appears and an exaggerated need for attention. Likely she does have physical problems but it is hard to separate out the psychological overlay from the physical problems.

R. 512. Dr. Storch noted that Julia's prognosis for occupational functioning is unknown, and her prognosis for personal functioning and social functioning is extremely poor. R. 513. Dr. Storch stated,

> it is likely that Julia would need to perform a simple and repetitive task given her low intellectual ability. It is unlikely that she would maintain regular attendance in the workplace or perform work activities on a consistent basis. She may have panic attacks or she may come up with a panic attack. It is certain that she would need additional supervision and it is unlikely that she would complete a normal workday or workweek without interruptions from her personality disorder as well as mood disorder. It is unknown whether or not she could accept instructions from supervisors. It would be difficult for her to interact appropriately with coworkers and the public because of her personal deception it seems about how her life is. She could not deal with the usual stresses encountered in competitive work or keep up the pace.

R. 513.

In September 2014, Julia was involuntarily hospitalized under a temporary detention order for depression after she threatened to overdose on pills. R. 533–64. Julia was discharged

three days later as stable. R. 535. Julia was involuntarily hospitalized a second time in March 2015, after she took a handful of Klonopin as a result of conflict with her husband and step son. R. 520. Julia was discharged as stable, and she followed up with therapy at Mount Rogers Community Services Board. R. 517–32, 568–72. Julia reported crying daily, anhedonia, depression, concentration issues, difficulty controlling emotions and mood swings. R. 568. Upon exam, Julia had decreased impulse control, decreased frustration tolerance, impaired interpersonal boundaries, impaired insight, difficulty regulating emotions, anxious behavior, normal movement, loud speech, appropriate affect, angry and hostile mood, appropriate perception, thought processes and content, intact memory, and was oriented to person, place and time. R. 571. Julia continued to seek counseling with Mount Rogers through December 2015. R. 568–588, 591–621.

On December 16, 2013, state agency psychiatrist Jo McClain, Psy.D., reviewed Julia's records and determined that she had limited ability to understand and remember complex and detailed instructions but could understand and remember simple, one and two-step instructions. R. 158. Dr. McClain found that Julia was moderately limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, and work in coordination with or in proximity to others without being distracted. Id. Dr. McClain found that Julia "would have difficulty working with or near other employees without being distracted by them. The claimant has a history of impulsive behavior but would be able to carry out short and simple instructions. Id. Dr. McClain also found that Julia had moderately limited ability to accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them.

Dr. McClain stated, "the claimant is able to meet the basic mental demand of competitive work on a sustained basis despite the limitations resulting from her impairments." R. 159.

On July 2, 2014, state agency psychologist Eric Oritt, Ph.D., reviewed Julia's records and arrived at substantially similar conclusions to Dr. McClain. R. 174–76.

Based on the evidence set forth above, the ALJ determined that Julia had a severe impairment of bipolar disorder, personality disorder, PTSD and major depressive disorder. R. 52. At step three of his analysis, the ALJ determined that Julia had mild restrictions in activities of daily living, moderate difficulties with concentration, persistence or pace, and social functioning, and no episodes of decompensation of extended duration. R. 54. With regard to social functioning, the ALJ noted that Julia reports that she talks on the phone, her family causes her to have panic attacks, large groups of people cause her to have panic attacks, and she goes to town and church on a regular basis. Id. With regard to concentration, persistence or pace, the ALJ noted, "[Julia] reported that she is able to drive a car, go shopping, pay bills, count change, handle a savings account, use a checkbook/money orders, watch TV, work puzzles, and do word search." Id.

At step four of his analysis, the ALJ reviewed Julia's testimony and her physical and mental health treatment. R. 56–58. The ALJ considered the consultative opinion of Dr. Storch, and gave it "less weight," finding it,

> inconsistent with the objective medical evidence as the claimant received little mental health treatment during the period at issue. In fact, the claimant testified that she did not receive any mental health treatment between 2012 and 2015. Furthermore, the medical evidence shows the claimant was assessed with a GAF score of 51–55, which the DSM-IV indicates is moderate in symptom severity and the record as a whole supports no more than moderate mental limitations, as described in the residual functional capacity above.

R. 58.

The ALJ also discussed the state agency physicians' opinions, stating:

> [t]he State agency consultants evaluated the objective medical record and the claimant's allegations and determined that she is capable of performing a range of unskilled light exertional work with the ability to frequently balance, stoop, and kneel, but only occasionally climb, crouch, and crawl. The undersigned considered the updated medical records received since the residual functional capacity assessments were made by these medical consultants, but there is no new evidence that shows the claimant is unable to perform unskilled light work. Thus, because this opinion evidence remains consistent with and supported by the objective evidence as a whole it is given great weight.

R. 58. The ALJ assessed a residual functional capacity limiting Julia to light work with a "low-stress job (defined as having only occasional decision making or changes in the work setting) with only occasional interaction with the public or co-workers. The work should be isolated with only occasional supervision and the claimant is expected to be absent from work periodically, but no more than once a month." R. 55.

Julia asserts that the ALJ's analysis of Dr. Storch and the state agency physicians' opinions is insufficient and warrants remand. Specifically, Julia alleges that the ALJ failed to provide good reasons to give Dr. Storch's opinion "less" weight, and failed to sufficiently review or weigh the state agency psychologists' opinions.

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. See Hays v. Sullivan, 907 F.2d 1452, 1456 (4th Cir.1990); Taylor v. Weinberger, 528 F.2d 1153, 1156 (4th Cir. 1975). An ALJ may not reject medical evidence for no reason or for the wrong reason, see King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980); however, an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

9

An ALJ is required to consider and address medical source opinions in the RFC assessment and to explain why any opinion conflicting with the RFC assessment was not adopted. SSR 96–8p, 1996 WL 374184, at *7. "The ALJ is obligated to both identify specific evidence from the medical opinions that he found inconsistent with the medical evidence as a whole, and also to explain 'the reasons for his findings, including the reason for rejecting relevant evidence in support of the claim.'" Lewis v. Colvin, Civ. Action No. CBD–11–1423, 2013 WL 6839505, at *5 (D. Md. Dec. 23, 2013) (citing King v. Califano, 615 F.2d at 1020).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision. Here, the ALJ did not sufficiently explain his rationale with regard to the weight he afforded the medical opinion evidence.

The ALJ gave "less" weight to the opinion of Dr. Storch, the only examining physician to provide an opinion in the record. R. 58. The ALJ found Dr. Storch's opinion "inconsistent with objective medical evidence," because Julia received "little mental health treatment during the period at issue." R. 58. In support, the ALJ referenced Julia's testimony that she had no mental

10

health treatment between 2012 and 2015, and a GAF score reflecting moderate mental limitations. Id. The ALJ's classification of Julia's mental health treatment as "little" is debatable; however, his notation that she had "no" mental health treatment between 2012 and 2015 (R. 58) is incorrect. Dr. Stewart's records (which were explicitly referenced in Dr. Storch's report), reflect that Julia sought mental health treatment consistently during that timeframe and was being treated with Lexapro, Valium and other medications for depression and anxiety. R. 392–423, 490.

Further, the ALJ did not explain how Julia's "little" mental health treatment contradicted Dr. Storch's opinion that Julia was unlikely to be able to maintain regular attendance in the workplace; perform work activities on a consistent basis; complete a normal workday or workweek; interact appropriately with coworkers or the public; deal with the usual stresses encountered in competitive work; or keep up the pace. R. 513.

The ALJ also failed to discuss how Dr. Storch's findings compared with the state agency psychologists opinions. Indeed, the ALJ's analysis of the state agency physicians' opinions appears to only discuss the medical physician's opinions and not the psychologist opinions. The ALJ did not specifically discuss the state agency psychologists' opinions in the record, or assign them weight. The Commissioner argues that the ALJ incorporated the psychologists' opinions when he mentioned their findings that Julia can perform "unskilled" light exertional work. Comm'r Br. Summ. J. p. 14. The word "unskilled" is the only evidence that the ALJ reviewed or considered the state agency psychologists' opinions. The ALJ does not review or discuss Dr. McClain's finding that Julia is moderately limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, and work in coordination with or in proximity to others without

being distracted. R. 158.  Dr. McClain found that Julia "would have difficulty working with or near other employees without being distracted by them. The claimant has a history of impulsive behavior but would be able to carry out short and simple instructions." Id.  Dr. Oritt determined that Julia would be moderately limited in completing a normal workday/workweek without interruptions and in performing at a consistent pace. R. 175. The ALJ does not discuss or explain how Drs. McClain and Oritt's findings either support or disagree with Dr. Storch's conclusions.

When considering a state agency medical physician's opinion, the ALJ must evaluate those findings just as any other medical opinion. 20 C.F.R. §§ 404.1527(e). Requiring an ALJ to assign specific weight to medical opinions is necessary, because a reviewing court "faces a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence." Arnold v. Sec'y of Health Educ. & Welfare, 567 F.2d 258, 259 (4th Cir.1977). The assignment of weight needs to be sufficiently specific "to make clear to any subsequent reviewers the weight the adjudicator gave to the ... source's medical opinion and the reasons for that weight." SSR 96–6p (requiring that an ALJ "explain the weight given to the opinions" of state agency physicians). See Warren v. Astrue, Civ. Action No. 2:08cv03, 2008 WL 3285756, at * 11 (W.D. Va. Aug. 8, 2008) ("The ALJ's decision cannot be supported by substantial evidence when he fails to adequately explain his rationale for rejecting the opinions of those whom he otherwise gave great weight to in arriving at his decision.")

The ALJ's failure to provide a fulsome explanation of his analysis of the physician opinions in the records also leaves the reviewing court to guess as to how a restriction of low-stress work accommodates Julia's moderate impairment with concentration, persistence or pace. In Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to

simple, routine tasks or unskilled work.'" 780 F.3d 632, 638 (4th Cir. 2015) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id. Thus, while Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, it does underscore the ALJ's duty to adequately review the evidence and explain the decision. This is especially so where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. See also Monroe v. Colvin, 826 F.3d 176, (4th Cir. 2016) (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically apply the law to the record).

 Here, the ALJ did not explain why a limitation to low-stress work sufficiently accommodates Julia's moderate difficulty with concentration, persistence or pace. Every mental health physician opinion in the record found that Julia has a moderate impairment with concentration, persistence or pace. R. 154, 174, 513. Specifically, Dr. Storch determined that Julia could not maintain regular attendance in the workplace, could not perform work activities on a consistent basis, could not complete a normal workday or workweek without interruptions due to her personality disorder and mood disorder, and could not keep up the pace. R. 513. As noted above, the ALJ did not discuss or explain what evidence contradicted Dr. Storch's

findings, nor did the ALJ discuss the state agency psychologists' findings that Julia had a moderate impairment with concentration, persistence or pace. Thus, as in Mascio, this court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637. In short, the ALJ's failure to explain why Julia's moderate concentration deficits did not translate into additional limitations in the RFC constitutes reversible error and requires remand. See id.; Nichols v. Colvin, No. 7:15-cv-44, 2016 WL 4529780, at *3–*4 (W.D. Va. Aug. 3, 2016); White v. Colvin, No. 4:14-CV-00018, 2015 WL 1958885, at *12 (W.D. Va. May 1, 2015). The ALJ must sufficiently articulate his findings such that the district court can undertake a meaningful review. Monroe v. Colvin, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) ("a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence); see also Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (emphasizing the importance of "[r]eaching a decision in a well-reasoned and documented fashion" and admonishing ALJs to "[s]how your work.").

Because I find that remand is warranted based on the ALJ's failure to properly account for Julia's moderate impairment in concentration, persistence, and pace, Julia's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Julia's remaining allegations of error.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND GRANTING in part** Julia's Motion for Summary Judgment, **DENYING** the Commissioner's Motion for Summary Judgment, and **REMANDING** this matter for consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Enter: January 2, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge